GEORGE J. JACOB, JR., ET AL. *v.*
SEABOARD, INC., ET AL.
(10754)

DUPONT, C. J., DALY and O'CONNELL, Js.

Argued March 24—decision released July 14, 1992

*Roger J. Frechette,* with whom was *Matthew E. Frechette,* for the appellants (plaintiffs).

*Stephen I. Traub,* with whom, on the brief, was *Suzanne L. McAlpine,* for the appellees (defendants).

DUPONT, C. J. This appeal arises from the trial court's dismissal of the plaintiffs' application seeking confirmation of an arbitrator's award. The sole issue before this court is whether the trial court correctly concluded that the parties did not intend to have their written agreement, which provided for an appraisal of the plaintiffs' shares of stock, require an arbitration under chapter 909 of our statutes. We affirm the judgment of the trial court.

The plaintiffs collectively own 264 shares (23.6 percent) of the common stock of the defendant, Seaboard, Inc. On November 8, 1989, the parties signed an agreement fixing the terms for the sale of the plaintiffs' stock.[1]

Pursuant to the agreement, each of the parties appointed one appraiser. When the appraisers were unable to agree on an appropriate valuation, Michael J. Bolotsky was chosen to determine a value for the stock pursuant to the contract. On December 31, 1990,

---

[1] The second clause of the agreement states: "2. Determination of Purchase Price. The Sellers shall within fourteen (14) days of the execution of this Agreement by both parties appoint an appraiser of their choice and the Buyer shall within the same period appoint an appraiser of its choice. The two (2) appraisers shall independently determine the fair market value of the Sellers' shares of stock as of September 30, 1989, the date of the most recent financial data of the Buyer. The Buyer shall provide to T.M. Byxbee Company reasonable access to all business and financial data . . . on or before November 13, 1989. On or before November 30, 1989, said T.M. Byxbee Company shall request any additional information it reasonably feels is necessary, and within One Hundred Twenty (120) days of receipt thereof, Sellers' appraiser and Buyers' appraiser shall then meet to compare their respective appraisals to arrive at a consensus as to the fair market value of the Sellers' shares of stock. If within fifteen (15) days after such meeting, the appraisers shall be unable, after making a good faith effort, to agree upon an appropriate valuation, they shall by mutual agreement within fifteen (15) additional days select a third appraiser to whom the matter shall be submitted. . . . After giving each appraiser full opportunity to be heard, the third appraiser shall then make its own independent determination of the fair market value of the Sellers' shares of stock, which valuation shall be final and binding upon all parties. . . ."

he wrote to both parties. Bolotsky stated that the parties had agreed on a sale price of $15,425 per share and that, in his opinion, it was a fair price.[2]

The parties did not conclude the sale. On June 4, 1991, the plaintiffs' filed an Application to Confirm Arbitrator's Award pursuant to General Statutes § 52-417. At the argument of the matter, the only evidence presented to the trial court was the written contract, Bolotsky's letter, and various other correspondence between the parties. There was no testimony heard by the trial court.

The plaintiffs contend that the second clause of the agreement is an agreement to arbitrate, pursuant to General Statutes § 52-408.[3] They claim that the trial court abused its discretion in ruling that the clause does not evidence an agreement to arbitrate, that it does not satisfy the requirements of § 52-408, and that the parties did not intend to arbitrate any part of the agreement.

[2] The letter states in full: "On December 6, 1990, I reported to you that I had reached a preliminary conclusion regarding the Fair Market Value of 264 shares of Seaboard, Inc. owned as of September 30, 1989 by Stephanie J. Jacob and the Estate of George J. Jacob. I indicated that it was my opinion that the Fair Market Value per share as of September 30, 1989 would have been between $15,200 and $15,650. I further indicated that, if your clients were unable to agree on a price within this range, I would subsequently conclude a specific Fair Market Value, and it would be somewhere within this range. It is my understanding that, on December 24, 1990, your clients agreed on a price of $15,425 per share. Please be advised that it is my opinion that, as of September 30, 1989, a price per share of $15,425 for the 264 shares of Seaboard, Inc. is not an unreasonable representation of the Fair Market Value of the shares."

[3] General Statutes § 52-408 provides: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof . . . or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

Arbitration is "the voluntary submission, by the interested parties, of an existing or future dispute to a disinterested person or persons for final determination." *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 121, 318 A.2d 84 (1972); *Harry Skolnick & Sons* v. *Heyman,* 7 Conn. App. 175, 179, 508 A.2d 64 (1986). General Statutes § 52-408 provides a statutory right for parties to agree in writing to arbitration.

The right to arbitration can be created only by contract. *Wesleyan University* v. *Rissel Construction Associates, Inc.,* 1 Conn. App. 351, 472 A.2d 972, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). Our statutes do not require any particular words or form to create an arbitration agreement. " 'The intent of the parties that arbitration be the exclusive method for the settlement of disputes arising under the contract must be *clearly manifested.* This *express intent* by both parties to enter into the arbitration agreement is essential to its existence.' . . . An agreement to arbitrate must be clear and direct and not depend on implication." (Citations omitted; emphasis in original.) *Harry Skolnick & Sons* v. *Heyman,* supra, 179, citing M. Domke, Commercial Arbitration § 5.01, p. 49.

In this case, the trial court did not find a clearly expressed intent of the parties to arbitrate. Ordinarily, the intent of the parties to a contract is a question of fact to be determined by the trier of fact. *First Hartford Realty Corporation* v. *Ellis,* 181 Conn. 25, 33, 434 A.2d 314 (1980); *Connecticut National Bank* v. *N.E. Owen II, Inc.,* 22 Conn. App. 468, 578 A.2d 655 (1990). Here, the only evidence on which the trial court could base its decision was the contract itself and correspondence written after the contract had been signed. Therefore, "the issue of intent, although ultimately factual in nature, presents a question of law. The trial court's conclusions as to intent were based not on such factors as the credibility of witnesses, or on the testi-

mony of live witnesses as to the meaning of documents or as to circumstances surrounding the execution of those documents, but on the intent expressed in the [contract] considered in the light of their surrounding circumstances." *Marion Road Assn.* v. *Harlow,* 1 Conn. App. 329, 332, 472 A.2d 785 (1984). When the trial court has no occasion to evaluate the credibility of witnesses or to assess the intent of the parties, the record before it is identical to the record before this court. In these circumstances, the legal inferences to be drawn from the documents raise questions of law rather than of fact. *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53–54, 607 A.2d 431 (1992).

The trial court reviewed the distinction between appraisal and arbitration to determine the parties' intent. "There is a clear and recognized distinction between the arbitration of a controversy and a contract, one term of which calls for the ascertainment by designated persons of values, qualities, or similar facts. . . . In an arbitration, there must be some difference or dispute in addition to the amount or value of damages, existing or prospective, between the parties, and they must intend that it should be determined in a quasi-judicial manner. That is the distinction between an agreement for an appraisal or a valuation, and an arbitration. In the case of a valuation and appraisal, there is no other difference or dispute between the parties and they intend that the appraiser shall, without taking evidence or hearing arguments, make his valuation according to his own skill, knowledge and experience." R. Rodman, Commercial Arbitration § 2.3, pp. 20–21.

The distinction between appraisal and arbitration described by Rodman was discussed in *Covenant Ins. Co.* v. *Banks,* 177 Conn. 273, 413 A.2d 862 (1979). We agree with the plaintiff that *Covenant Ins. Co.* focuses on the question of whether the parties sought to submit a controversy or dispute to a third party for final

determination. We also agree that the valuation of stock can be an arbitrable controversy. *Ginsberg* v. *Coating Products, Inc.,* 152 Conn. 592, 595, 210 A.2d 667 (1965). Neither of these cases, however, disposes of the case before us because neither court was asked, as was the trial court here, to determine whether the parties intended by their contract to agree to arbitration.

*Covenant Ins. Co.* involved a statutory mandate for an appraisal as required by General Statutes (Rev. to 1979) § 38-98 (now § 38a-307) and, therefore, there was no need to consider the question of the parties' intent. In *Ginsberg,* there was a clearly expressed arbitration clause in the parties' contract, leaving the court to determine only whether there was a controversy as defined by General Statutes § 52-408. The sole question here, however, is whether the parties intended to arbitrate a dispute arising out of the valuation of the plaintiffs' stock.

Arbitration is a quasi judicial proceeding. See *Florasynth, Inc.* v. *Pickholz,* 750 F.2d 171, 173–74 (2d Cir. 1984); *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 343, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1984); *Local 530, AFSCME, Council 15* v. *New Haven,* 9 Conn. App. 260, 269, 518 A.2d 941 (1986). It is a contractual remedy intended to avoid the formalities of ordinary litigation. *Ginsberg* v. *Coating Products, Inc.,* supra. Such a quasi judicial proceeding is adversarial in nature, and implies that the parties will present witnesses and evidence, if they want, after notice of a hearing date, and argue their positions to an impartial decision maker. The contract in the present case allowed both of the parties' chosen appraisers, if they were unable to agree on the fair market value of the plaintiffs' stock, to select a third appraiser. That appraiser would make an independent determination of the fair market value "[a]fter giving

each appraiser full opportunity to be heard." Although the appraisers are given an opportunity to be heard, the contract does not provide any similar opportunity for the parties or their counsel. Where the decision is to be made solely on the opinion of the parties' expert witnesses, without taking evidence from or hearing argument of the parties, without notice to the parties, and without providing the parties the opportunity to question the opinions of the other's expert witness, the attributes of a quasi judicial proceeding are missing. See R. Rodman, supra, § 2.3, p. 22.

Another distinction between arbitration and appraisal is the degree of formality that attends the proceedings. Our statutes make provisions for subpoena and deposition powers, formal notice to the parties, arbitrator's oaths, and the time necessary to render awards. See General Statutes §§ 52-411 through 52-416. The record does not reveal that any of these powers were exercised or that a hearing that met any of the statutory requirements for an arbitration was held. We conclude that the intent of the parties, as evidenced by the language of their agreement, was to provide for an appraisal subject to enforcement in a separate plenary action, rather than an arbitration award enforceable through confirmation by the trial court.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Because we conclude that the agreement of the parties did not evidence an intent to arbitrate a dispute, we need not reach the issue of whether the letter of the appraiser; see footnote 2, supra; was the equivalent of an arbitrator's award pursuant to General Statutes § 52-426 (b). We also need not decide whether that letter was a settlement by the parties of their dispute prior to the rendition of an award by an arbitrator. See M. Domke, Commercial Arbitration § 28.03, p. 422.