[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ANDDEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT
CT Page 2614
Factual Background
On September 12, 1991, the plaintiff, Leroy Young, was involved in an auto accident, while operating a non-owned motor vehicle. The vehicle was owned by the plaintiff's employer[1]
and insured by Continental under a policy providing $1,000,000 in underinsured/uninsured motorist ("UM/UIM") benefits. Pi.'s Mem. Supp. Summ. J., Ex. A. The plaintiff's own policy with Metropolitan was also in force at the time of The accident. The plaintiff's policy insured two vehicles and provided UM/UIM coverage of $100,000 per person, a separate premium having been paid for each of the two vehicles. Id., Ex. B. The total UM/UIM coverage under the Metropolitan policy, after intra-policy stacking, was $200,000. Continental's $1,000,000 policy is primary and Metropolitan's $200,000 is excess pursuant to the insurance contracts and the existing underinsured/uninsured law.[2] The tortfeasor had $100,000 in liability insurance coverage which was paid to the plaintiff. Pl.'s Mem. Supp. Summ. J., Ex. C.
The plaintiff filed a complaint against Metropolitan on November 5, 1995, alleging that as his damages "greatly exceed[ed] the policy limits recovered from the [tortfeasor] . . . and greatly exceed[ed] the underinsured motorist coverage available under the Continental policy"; Complaint, ¶ 16; he was "entitled to recover his full damages by the aggregation of uninsured policy coverage on each of [two] automobiles from . . . Metropolitan." Id., ¶ 17. Subsequently, the plaintiff moved to stay his action against Metropolitan, pending the outcome of his arbitration proceeding against Continental. This motion was denied on July 8, 1996. By orders dated October 20, 1996 and April 18, 1997, however, the plaintiff's subsequent Motions for Exemption from Dormancy were granted, pending the outcome of the arbitration proceedings against Continental: "if the arbitration proceedings result in exhaustion of the UM limits of the Continental policy, then this [present action against Metropolitan] may go forward to determine what, if any, additional UM benefits should be awarded to plaintiff." Pl.'s Motion for Exemption from Dormancy, dated October 20, 1996 and April 18, 1997, ¶ 5.
Pursuant to the terms of the Continental policy, the plaintiff also initiated arbitration proceedings against Continental to recover [UM] benefits.[3] By letters dated CT Page 2615 November 20, 1995, December 19, 1995, and March 12, 1996, the plaintiff invited Metropolitan to join in its arbitration. Id., Ex. E. Metropolitan declined. Its policy with the plaintiff did not have an arbitration provision; by contrast, section four of its policy specifically provided that "[Metropolitan would not be] bound by any judgment against any person or organization obtained without [its] written consent. . . ." Pl.'s Mem. Supp. Summ. J., Ex. B, p. 4.
On September 9, 1997, the arbitrators issued a finding and award of damages in the amount of $1,150,000, from which the arbitrators made the following deductions or credits to Continental:
 Continental Coverage Limit $1,000,000 Payment by Tortfeasor $ 100,000 BRB[4] Payments by Continental $ 4,486 SSDI Benefits $ 132,664 __________ Total Set Offs/Credits $ 237,150
Net Damage Award $ 762,850
See id., Ex. C., p. 16. The arbitrators reduced Continental's responsibility by the total set offs and credit amount and found that Continental owed the plaintiff $762,850. Pl.'s Mem. Supp. Summ. J., Ex. C, p. 16. The arbitrators did not make findings with respect to Metropolitan's excess policy. Id.
The plaintiff filed his motion for summary judgment against Metropolitan on October 3, 1997, on the ground that there is no genuine issue as to any material fact and that he is therefore entitled to judgment as a matter of law. He argues in support of his motion that (1) intra-policy stacking requires Metropolitan, as an excess carrier, to provide him with UM coverage; and that (2) the arbitration panel correctly allocated the total set offs and credit amounts to Continental as the primary insurer; and that (3) Metropolitan, is collaterally estopped from contesting the arbitration award as to damages.
The defendant filed a memorandum in opposition and cross motion for summary judgment on October 29, 1997, on the ground that there is no genuine issue as to any material fact and it is therefore entitled to judgment as a matter of law. In support of its motion, it argues that (1) the plaintiff has failed to CT Page 2616 exhaust Continental's primary coverage based on the proper application of available set offs and credits; and that (2) it may not be collaterally estopped from "litigating matters decided by [the] arbitration entered into pursuant to Continental's insurance policy."
Legal Discussion
I. Collateral Estoppel
The plaintiff argues that Metropolitan is estopped from contesting the arbitration panel's award of damages. The plaintiff argues that privity exists between Metropolitan and Continental as the amount of their respective UM motorist payments is determined, within contractual limits, by the arbitration panel's determination of tort damages. In addition, the plaintiff argues that Metropolitan's interests were adequately represented by Continental's counsel of Morris, Mahoney Miller as well as by arbiter, Jon Berk, the co-author of the text, Connecticut Law of Insured and Underinsured Motorist Coverage.[5] The plaintiff argues that through Continental's full and fair opportunity to cross examine each witness over the course of the several days of testimony and to produce evidence contesting the plaintiff tortfeasor's claim, Metropolitan was afforded the same opportunity. The defendant argues that it may not be estopped from contesting the arbitration panel's award of damages as it was not a party to the arbitration proceeding, thus the panel's decision cannot bind it. The defendant argues, in the alternative, that even if the panel's decision is a "final judgment" as to Metropolitan, it cannot be estopped from litigating the proper application of set offs as this issue was never litigated from its perspective, a perspective that is necessary for full and fair litigation as it is at odds with Continental's perspective.
"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim."Jackson v. R.G. Whipple. Inc., 225 Conn. 705, 714, 627 A.2d 374
(1993). "To invoke collateral estoppel, the [issue] sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." Mazziotti v. Allstate Ins.Co., 240 Conn. 799, 812, 695 A.2d 1010 (1997), citing AetnaCasualty Surety Co. v. Jones, 220 Conn. 285, 297, 596 A.2d 414
CT Page 2617 (1991). Additionally, the issue "must have been fully and fairlylitigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Citations omitted; emphasis in original; internal quotation marks omitted.) Jackson v. R.G. Whipple. Inc., supra,225 Conn. 714. "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Emphasis in original.) Id., citing 1 Restatement (Second), Judgments 27, comment (d) (1982). "An issue is necessarily determined if, `in the absence of a determination of the issue, the judgment could not have been validly rendered.'" (Internal quotation marks omitted.) Id., citing F. James, Jr. G. Hazard, Jr., Civil Procedure (3d Ed. 1985) 11.19, p. 624-25.
Collateral estoppel may also be invoked against those in privity with parties to a prior proceeding. See Aetna Casualty Surety Co. v. Jones, supra, 220 Conn. 303. "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel or res judicata is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." (Citations omitted.) Mazziotti v. AllstateIns. Co., supra, 240 Conn. 814-15.
In Mazziotti v. Allstate Ins. Co., supra, 240 Conn. 817, the Supreme Court found that the trial court improperly invoked the doctrine of collateral estoppel, as the tortfeasor, the defendant in the prior proceeding, and the defendant insurer, the party against whom collateral estoppel was asserted in the present proceeding, did not share the same legal right. The plaintiff tort victim of an automobile accident moved to enforce the judgment that he had obtained in a prior proceeding against the tortfeasor,[6] against its underinsurance carrier, Allstate. Id., 817. Although the plaintiff was granted his motion to implead Allstate into the prior proceeding, he never made Allstate a party. Id., 801. The trial court held that the plaintiff could enforce the judgment against Allstate, as Allstate was estopped from relitigating the liability and damage CT Page 2618 issue as it was in privity with the defendant tortfeasor and had had sufficient notice of the prior action to render the judgment binding on Allstate. Id., 811.
In reversing the trial court on the collateral estoppel issue, the Supreme Court reasoned that as the "[tortfeasor] and Allstate did not share the same legal right, they were not in privity." (Emphasis in original.) Mazziotti v. Allstate Ins. Co., supra, 240 Conn. 817. "The substance of the cause of action [against the tortfeasor] in the first trial was an action in tort; specifically, whether [the tortfeasor] was liable to the plaintiff for the negligent operation of his motor vehicle. [By contrast, an] action to recover under an automobile insurance policy . . . is not an action in tort but, rather, [is] an action in contract. The obligation of an insurance carrier providing uninsured motorist coverage on the automobile of the insured person is a contractual obligation arising under the policy of insurance." (Emphasis in original.) Id. The court looked to whether the insurer and the tortfeasor were alter egos, for "commonality of interest in proving or disproving the same facts is not enough to establish privity." Id.
The Mazziotti court went on to explain the connection between privity of "legal right" and "full and fair litigation": "the interest of the party to be precluded must have been suffficiently represented in the prior action so that the application of collateral estoppel is not inequitable." Id., 818. The Mazziotti court found that the uninsured motorist insurer's interests were not sufficiently represented in the prior negligence action against the tortfeasor defendant driver. Id. Because the tortfeasor's liability was limited to $20,000 under its policy, "there was little or no incentive in [the underlying action] to litigate against a recovery in excess of that amount. . . . Allstate [the UM/UIM insurer] . . . with five times the risk, was in a different position with a far greater incentive to litigate [in the present action] . . . The relationship between the party to be estopped (Allstate) and the [tortfeasor] [was] not sufficiently close so as to justify the application of the principles of preclusion." Id. See also AetnaCasualty Surety Co. v. Jones, supra, 220 Conn. 305-06 (finding that the defendant, who was found guilty of first degree manslaughter for the killing of his wife in an underlying criminal action, was in privity with the victim's heirs for purposes of collecting damages under an insurance policy in the subsequent wrongful death action; they shared the same legal CT Page 2619 right to recover damages under the policy as the right [emanated] from the contractual relationship between the insurer and the insured defendant killer; thus, the administratrix was estopped from relitigating the question of intent for purposes of collecting under the defendant insurer's policy in the wrongful death action, as intent had been proven in the underlying criminal action).
In State v. Fritz, 204 Conn. 156, 170, 527 A.2d 1157 (1987), the Supreme Court upheld the trial court's denial of the defendant's motion to dismiss an information on the ground that the doctrine of collateral estoppel precluded the relitigation of issues in the criminal proceeding, as the same issues had been fully and fairly litigated in the defendant's favor in the proceeding before the commissioner of consumer protection. In finding that no privity existed between the State's Attorneys Office and the Department of Consumer Protection, the court concluded that their legal interests were dissimilar. "The department of consumer protection is granted the authority to investigate . . . licensing complaints. . . . [Its] administrative proceeding [is therefore designed . . . to police the licensing requirements within the state. . . . The state's attorneys [by contrast] . . . exercise all powers and duties with respect to criminal matters. . . . [Thus,] the state's interest in having guilt or innocence determined [was] not adequately served in an administrative proceeding . . . [as] the state's attorney [had] no control over the timing, substance or litigation of charges lodged against the defendant by the department of consumer protection." Id., 175-76. See also Walkerv. Richardson, Superior court, judicial district of Fairfield at Bridgeport, Docket No. 414337 (May 7, 1996, Hartmere, J.) (17 Conn. L. Rptr. 18, 20) (finding that the default judgment of damages, entered against the tortfeasor uninsured motorist in the prior proceeding, was binding on the UM insurer as they shared the same legal interest and as the UM insurer, a named party to the prior proceeding who filed an appearance, series of pleadings, motions, and discovery, had had an adequate opportunity to litigate the matter [of its liability under the UM policy]); but see Harnicar v. Nationwide Mutual Ins. Co., Superior Court, judicial district of Litchfield, Docket No. 063893 (June 7, 1995, Pickett, J.) (14 Conn. L. Rptr. 543, 546-47) (finding that a UIM/UM insurer who was not a party to the prior wrongful death action was bound by the judgment of damages as the insurer and the uninsured motorist shared the same legal interest in whether the plaintiff was legally entitled to collect CT Page 2620 damages from the uninsured motorist; and the insurer had an adequate opportunity to intervene and present defenses to protect its position).[7]
The plaintiff's argument in support of his motion for summary judgment is unavailing as privity does not exist between Continental and Metropolitan; thus, Metropolitan may not be estopped from contesting the arbitration decision. Continental and Metropolitan do not share the same legal right as their separate rights arise from their separate contracts. Continental's contractual obligation to provide underinsured motorist payments is triggered when the insured proves that a third party is underinsured and legally liable. Williams v. StateFarm Mutual Automobile Ins. Co., 229 Conn. 359, 367-68,641 A.2d 783 (1994). By contrast, Metropolitan is an excess carrier. Metropolitan's legal obligations may not be triggered at all as its "policy applies only if the claimant's loss exceeds the policy limits of the primary insurer [Continental]." AetnaCasualty Surety Co. v CNA Ins. Co., 221 Conn. 779, 784,606 A.2d 990 (1992); Pecker v. Aetna Casualty Surety Co.,171 Conn. 443, 453, 370 A.2d 1006 (1976) (the "[excess carrier] is liable to the insured claimant within the monetary limit of its policy to the extent that the insured's damages exceed [the primary carrier's policy limit]."
It is because Continental and Metropolitan have disparate legal rights that Continental can not fully and fairly litigate Metropolitan's legal interests. That Metropolitan presently disputes the arbitration panel's allocations of set offs and credits in Continental's favor, exemplifies their disparate foci and calls into question whether Metropolitan's interest was "adequately served in the [arbitration] proceeding." State v.Fritz, supra, 204 Conn. 176. This court cannot presume that Continental counsel's full and fair opportunity to cross examine witnesses over the course of the several days of testimony and to produce evidence contesting the plaintiff tortfeasor's claim, necessarily served Metropolitan's interest; although, we can presume that it necessarily served Continental's interest.
The defendant is correct in its argument in cross motion that it may contest the arbitration panel's decision as it was not a party to the Metropolitan insurance contract's arbitration provision. "Contracts of insurance are to be construed in the same manner as other contracts, such that they are given a reasonable interpretation and the words used [are to] to be given CT Page 2621 their common, ordinary and customary meaning." Candido v.Worcester Ins. Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 343978, (July 22, 1997, Hodgson,J.) citing Aetna Casualty Surety Co. v. CNA Ins. Co., supra,221 Conn. 786. "Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . Even though it is the policy of the law to favor settlement of disputes by arbitration . . . arbitration agreements are to be strictly construed and such agreements should not be extended by implication. . . . Accordingly, the basis for arbitration in a particular case is to be found in the written agreement between the parties. . . . Persons thus cannot compel arbitration of a disagreement between or among parties who have not contracted to arbitrate that disagreement between or among themselves." (Citations omitted.) Wesleyan University v.Rissil Construction Associates, Inc., 1 Conn. App. 351, 354-55,472 A.2d 23 (1984). See Jacob v. Seaboard, Inc.,28 Conn. App. 270, 273, 610 A.2d 189 (1992) ("The express intent by both parties to enter into [an] arbitration is essential to its existence.") (Internal quotation marks omitted); WesleyanUniversity v. Rissil Construction Associates. Inc., supra,1 Conn. App. 355 (The plaintiff may not be compelled to join in the arbitration proceeding between its contractor and subcontractor; for while it consented to arbitrate with its contractor, it was not a party to the arbitration contract between the contractor and the subcontractor).
By express terms, the plaintiff insured, Young,[8] and the insurer, Continental, agreed to submit disagreements as to whether the insured was entitled to UM damages or the amount of those damages to arbitration[9] and that agreement is binding on them. See M L Building Corp. v. Housing Authority,35 Conn. App. 379, 382-83, 646 A.2d 244 (1994). Metropolitan, however, neither signed the Continental contract containing the arbitration provision, nor expressed its assent to the arbitration hearings;Sawmill Brook Racing Assn. Inc. v. Boston Realty Advisors. Inc.,39 Conn. App. 444, 451, 664 A.2d 819 (1995); thus, it may not be bound by the arbitration panel's decision. "Courts of law can enforce only such agreements as the parties actually make." Success Centers,Inc. v. Huntington Learning Centers, Inc., 223 Conn. 761, 772,613 A.2d 1320 (1992).
The defendant's alternative argument is that even were the court to decide that it is bound by the arbitration decision, it may not be estopped from contesting the panel's application of CT Page 2622 set offs and credits as this matter was not litigated with respect to it. Although the defendant may litigate matters decided by the arbitration panel, as detailed in part two of this opinion, the arbitration panel's allocation of full credit for the set offs to the primary insurer, was correct as a matter of law.
Accordingly, the court will deny the plaintiff's motion for summary judgment on the issue of whether the defendant is collaterally estopped from contesting the arbitration panel's award of damages as no privity exists between Continental and Metropolitan and therefore Metropolitan was not afforded a full and fair opportunity to litigate its claims.
In addition, the court will grant the defendant's cross motion for summary judgment on the issue of whether the defendant is collaterally estopped from contesting the arbitration panel's decision as it neither signed the Continental arbitration contract nor assented to the arbitration hearings. Thus, it can neither be compelled to arbitrate nor be held bound by the arbitration panel's decision.
 II. The Proper Allocation of Credits and Set Offs Between Primary and Excess Underinsurance Carriers
The plaintiff further argues (1) that intra-policy stacking requires Metropolitan to provide UM motorist benefits to the plaintiff in the amount of $200,000; and (2) that the arbitration panel properly "gave Continental [the primary underinsurance carrier] full credit for payment by the tortfeasor and other set offs and reductions." Pl.'s Mem. Supp. Summ. J., P. 7.
The defendant further argues that "the plaintiff can not sustain an action against Metropolitan [as he] has failed to exhaust the primary coverage by Continental based upon proper application of available set offs and credits." Def.'s Mem. Opp. and Cross, p. 3.
"The public policy established by the underinsured motorist statute is that every is entitled to recover for the damages he or she would have been able to recover if the underinsured motorist had maintained an adequate policy of liability insurance." (Brackets omitted; internal quotation marks omitted.)Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 27, 699 A.2d 964
(1997). Accordingly, "every automobile policy is to provide CT Page 2623 uninsured motorist coverage in accordance with [the insurance commissioner's regulations]." Pecker v. Aetna Casualty SuretyCo., supra, 171 Conn. 448. See General Statutes §38a-336(a)(1). An insurance policy, however, "may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury; (2) paid or are payable under any workmen's compensation or disability benefits law; or (3) paid under the policy in settlement of a liability claim. The policy may also provide that . . . any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage. . . ." Pecker v. AetnaCasualty Surety Co., supra, 171 Conn. 448, citing Regs., Conn. State Agencies § 38a-334-6(d).
In Aetna Casualty and Surety Co. v. CNA Ins. Co., supra,221 Conn. 788, the Supreme Court reversed the trial court decision to treat both of two UM insurers as primary. While the court stated that the "sole issue in the appeal concern[ed] the validity of "other insurance" clauses that are used to determine the order of the obligation to provide coverage between insurers furnishing underinsured motorist coverage to a claimant"; id., 780; it reinstated the arbitration panel's decision to award the set offs and credits to the primary insurer. The plaintiff tort victim of an automobile accident was insured as an operator of the vehicle under her father's policy with Aetna. At the time of the accident, the plaintiff was residing with her sister and brother-in-law, the named insureds under a policy with CNA, and was thus insured under their policy as a resident relative. After the tortfeasor's insurer paid its policy limits of $100,000, the plaintiff brought claims under the underinsured motorist provisions of the Aetna and the CNA policies. Both policies contained "other insurance" provisions which provided: "If there is other applicable similar insurance, we will not pay for any damages which would duplicate any payment made for damages under such similar insurance." Id., 782. In addition, both policy provisions regarded payments made with respect to a vehicle the claimant did not own as excess payments. Id.
Pursuant to the policies' terms, the claims went to arbitration and the panel determined that the plaintiff suffered total damages in the amount of $400,000; that the total UM coverage available under the Aetna policy was $300,000; and that the total UM coverage available under the CNA policy after stacking was $600,000. Id. The panel also decided that the CT Page 2624 insurer of the vehicle involved in the accident, Aetna, was the primary insurer and that the other insurer was excess. Id. "The panel, therefore, concluded that Aetna's coverage should be exhausted before CNA should be obligated to pay underinsured motorist benefits." Id., 782. The panel awarded Aetna full credit for the $100,000 tortfeasor payment; it ordered Aetna to pay the first $200,000 and CNA to pay the additional $100,000. Id.
On Aetna's motion to vacate and CNA's motion to confirm, the trial court held that the parties' respective "other insurance" provisions were in conflict and it declared both policies primary and prorated the tortfeasor's payment between them. Id., 783-84.
On appeal, the Supreme Court reversed the trial court proration judgment and reinstated the arbitrator's decision, reasoning that although each policy contained an other insurance/excess clause, the Aetna policy, by its own terms, did not envision being excess under the facts. "The policies themselves . . . dictate that we hold that the Aetna underinsured motorist coverage be primary and the CNA underinsured motorist coverage be excess." Id., 787. The court reinstated the arbitration panel's award, thus giving full credit for the tortfeasor payment to the primary insurer, Aetna. Id., 788. SeeLoika v. Aetna Casualty Surety Co., 44 Conn. Sup. 59, 70,667 A.2d 1308, aff'd, 39 Conn. App. 714, 667 A.2d 78 (1995), cert. denied, 236 Conn. 902, 670 A.2d 322 (1996) (awarding tortfeasor's insurer's payment as credit to the primary underinsurer, Allstate, for, "by fashioning this result the defendant [insurer] Aetna is treated as an excess carrier. . . . Its liability attaches only to the extent of the excess loss above the primary insurer's uninsured coverage. Some other pro rata division of deductions would be inconsistent with its role."); Englehardt v.New Hampshire Ins. Group, 36 Conn. Sup. 256, 261, 417 A.2d 366
(1980) (deducting worker's compensation award from the amount payable under the primary underinsurer's policy as "the primary insurer has the primary liability . . . [and it therefore] follows . . . that it also has first access to the [worker's compensation set off"); P. Morello, Jr. J. R. Donovan, Handbook of Connecticut Uninsured and Underinsured Motorist Law (1993) 40 ("It is generally recognized that when one policy is primary and one is excess . . . a primary carrier has the first claim to certain available reductions, which could completely offset the primary uninsured motorist carrier's obligation to pay benefits. A secondary uninsured motorist carrier actually could end up paying uninsured motorist benefits"); but see Stephen v.CT Page 2625Pennsylvania General Ins. Co., 224 Conn. 758, 761, 627 A.2d 258
(1993) (Parties agreed at the arbitration that the award would be prorated between the two insurance companies, and this agreement was not disputed on appeal); Chmielewski v. Aetna Casualty Surety Co, 218 Conn. 646, 653, 591 A.2d 101 (1991) (arbitrators' decision to have the two insurance companies share the tortfeasor's credits proportionately to their coverage was neither explained nor disputed upon appeal); Dunlop v. GovernmentEmployees Ins., Superior Court, judicial district of New Haven, Docket No. 322973 (February 3, 1993, Hodgson, J.) (prorating the tortfeasor payment between two UM insurers);[10] State FarmMutual Automobile Ins. Co. v. Varilla, Superior Court, judicial district of Middlesex, Docket No. 63761 (June 24, 1992, Austin,J.) (7 CSCR 875, 876) (effectively allocating tortfeasor's insurer's payment between insurers by arriving at the total UM coverage available to claimant by stacking coverage under two policies and subtracting the tortfeasor's insurer's payment).
The plaintiff's first argument in support of its motion for summary judgment is incorrect. As a matter of law, it is not intra-policy stacking per se which would require Metropolitan to pay UM benefits to the plaintiff in the amount of $200,000. "Stacking [of underinsured motorist coverage] is available when the insured has paid separate premiums for the underinsured motorist coverage afforded to each vehicle. . . . This is particularly true when each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle, and a separate premium is charged for the coverage afforded to each of the described vehicles." (Citations omitted; internal quotation marks omitted.) Kent v.Middlesex Mutual Assurance Co., 226 Conn. 427, 432-33 (1993). While stacking of coverage under an excess carrier's policy is available, the excess carrier's "policy applies only if the claimant's loss exceeds the policy limits of the primary insurer." Aetna Casualty Surety Co. v.CNA Ins. Co, supra, 221 Conn. 779. Thus, it is not stacking which renders Metropolitan liable to the insured within its monetary limit, rather, Metropolitan's obligation is triggered when the claimant's damages exceed the primary insurer's monetary limit. SeePecker v. Aetna Casualty Surety Co., supra, 171 Conn. 453.
The plaintiff's second argument is correct as a matter of law as the arbitration panel properly awarded full credit for the available set offs to Continental. Neither party disputes that Continental is the primary carrier and that Metropolitan is the excess carrier. Pl.'s Mem. Supp. Summ. J., p. 2; Def.'s Mem. Opp. CT Page 2626 And Cross, p. 5. Thus, Continental was properly awarded credit for the (1) the tortfeasor's insurer's payment; (2) its own BRB payment; and (3) SSDI benefits.[11] Under the reasoning employed by the arbitration panel in Aetna Casualty and Surety Co.v. CNA Ins. Co., supra, 221 Conn. 782, and upheld upon appeal to the Supreme Court, "[the primary insurer's] coverage should be exhausted before [the excess insurer] should be obligated to pay underinsured motorist benefits." The arbitration panel in the present case employed the Aetna Casualty methodology as it sought to exhaust Continental's coverage by applying the tortfeasor's insurer's payment ($100,000), its own BRB payment ($4,486), and the SSDI benefits ($132,664) as credits against Continental's $1,000,000 policy limit. The arbitration panel in the present case, like the panel in Aetna Casualty, ordered the primary carrier to pay up to its policy limit, less the credited amount. The excess carrier's liability, by contrast, "attaches only to the extent of the excess loss above the primary insurer's uninsured coverage. Some other pro rata division of deductions would be inconsistent with its role." Loika v. Aetna Casualty Surety Co., supra, 44 Conn. Sup. 69.
The defendant's argument in support of its motion for summary judgment is incorrect. While there are no issues of material fact in dispute, the defendant is incorrect as a matter of law in its argument that the plaintiff can not sustain an action against Metropolitan to collect UM benefits as it "has failed to exhaust the primary coverage by Continental based upon proper application of available set offs and credits." Def.'s Mem. Opp., p. 3. The substance of the defendant's argument is that the arbitration panel incorrectly awarded full credit for the available set offs to Continental. The defendant cites Allstate Ins. Co. v. Link,35 Conn. App. 338, 645 A.2d 1052 (1994) for the proposition that when the plaintiff tort victim's damages do not exceed the total coverage, the available set offs and credits are to be reduced from the total award. Defs. Mem. Opp., p. 6. This court believes that the defendant's reliance on Allstate Ins. Co. v. Link is misplaced. The question before the court in Link was whether the trial court erroneously credited the full amount paid out by the tortfeasor to each of two Allstate UM policies. Id., 346. The plaintiff tort victim was covered under two Allstate policies, one policy providing $200,000 in coverage and the other providing $400,000 in coverage. The trial court applied the tortfeasor payment of $100,000 to each of the two Allstate policies, thus crediting Allstate with $200,000. The gravamen of the issue then, was whether the trial court improperly reduced the amount of the CT Page 2627 underinsured motorist's benefits available to the plaintiff. Id.
Thus, when the Link court declared that the plaintiff "was entitled to have available a total of $600,000 . . . [instead of $400,000] under the two Allstate policies . . . [from which] Allstate should have been credited with only the $100,000 actually paid by the tortfeasor"; id., 349; the court revealed that its chief concern was to avoid compromising coverage for the insured. It was not, as the defendant argues, declaring that the rule for the application of set offs and credits when the plaintiff's damages exceed coverage is to first determine the total available UM coverage and then reduce the credits from the total coverage of both policies. Even were that the case, the defendant's case presents the converse situation: the plaintiff's damages do not exceed coverage. Thus, the defendant's derivation of the rule which it presumes is appropriate for the converse case — that where the damages do not exceed coverage, the set off and credit amounts are to be reduced from the damage award — is nonetheless without authority. As no agreement exists between Metropolitan and Continental to prorate the arbitration award between them; Stephen v. Pennsylvania General Ins. Co., supra,224 Conn. 761; there is no reason to deviate from the careful reasoning employed in Aetna Casualty and Surety Co. v. CNA Ins.Co., supra, 221 Conn. 782 wherein the court reinstated the arbitration panel's decision to apply the total set offs and credits against the primary insurer's policy limits. But seeChmielewski v. Aetna Casualty Surety Co, supra, 218 Conn. 653
(arbitrators' decision to have the two insurance companies share the tortfeasor's credits proportionately to their coverage was neither explained nor disputed upon appeal).
Therefore, the court will deny the plaintiff's motion for summary judgment on the issue of whether stacking requires Metropolitan to pay UM benefits in the amount of $200,000 as the excess carrier's liability is triggered when the claimant's loss exceeds the policy limits of the primary insurer. The court will grant the plaintiff s motion for summary judgment on the issue of whether the arbitration panel properly awarded full credit for the available set offs to the primary insurer, Continental. As a matter of law, the primary insurer's coverage should be exhausted before the excess carrier should be obligated to pay UM benefits; the primary insurer's coverage is exhausted when it is required to pay benefits up to its policy limits less full credit for available set offs. CT Page 2628
The court will deny the defendant's motion for summary judgment on the issue of whether the plaintiff has failed to exhaust the primary insurer's coverage "based upon proper application of available set offs and credits." The substance of this argument is that the arbitration panel incorrectly allocated full credit for the available set offs to Continental, but the court finds that the arbitration panel's allocation of set offs and credits was correct as a matter of law.
Conclusion
Based on the foregoing, the plaintiff's motion for summary judgment (#111) is denied on the issue of whether the defendant is collaterally estopped from contesting the arbitration panel's award of damages as no privity exists between Continental and Metropolitan and therefore Metropolitan was not afforded a full and fair opportunity to litigate its claims.
Additionally, the court will deny the plaintiff's motion for summary judgment on the issue of whether stacking alone requires the excess carrier, Metropolitan, to pay UM benefits in the amount of $200,000 as the excess carrier's liability is triggered when the claimant's loss exceeds the policy limits of the primary insurer. However, the court will grant the plaintiff's motion for summary judgment on the issue of whether the arbitration panel properly awarded full credit for the available set offs to the primary insurer, Continental. As a matter of law, the primary insurer's coverage should be exhausted before the excess carrier should be obligated to pay UM benefits.
The defendant's cross motion for summary judgment on the issue of whether the defendant is collaterally estopped from contesting the arbitration panel's decision is granted. The defendant was not a party to the Continental arbitration contract and thus, can neither be compelled to arbitrate nor be held bound by the arbitration panel's decision.
Finally, the court will deny the defendant's cross motion for summary judgment on the issue of whether the plaintiff has failed to exhaust the primary insurer's coverage "based upon proper application of available set offs and credits." The substance of this argument is that the arbitration panel incorrectly allocated full credit for the available set offs to Continental, but the court finds that the arbitration panel's allocation of set offs and credits was correct as a matter of law. CT Page 2629
So ordered.
Michael Hartmere Judge of the Superior Court.