[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION TO PROCEED TO ARBITRATION
 PROCEDURAL HISTORY
The plaintiff, Geraldine Lupoli, trustee of the Gloria Dichello Irrevocable Family Trust, applied for an order to proceed with arbitration on the ground that paragraph eight of the stock purchase and sale agreement into which she and Edward Crowley entered with the defendants, Burton Zempsky and Jules Lang, requires that valuation disputes be settled by arbitration. Paragraph eight provides for valuation by Ernst Young. However, "[i]f within thirty (30) days after receiving Ernst Young's written report, Buyer and Seller cannot reach agreement on any determination by Ernst Young, then Ernst Young shall refer the matter to another nationally recognized accounting firm which shall decide the matter. Buyer and Seller agree to abide by the decision of such accounting firm and Buyer and Seller agree to each pay one-half of the fees and expenses of Ernst Young and such accounting firm."
The defendants filed a reply memorandum arguing that paragraph eight does not evidence an intent to arbitrate.
 ISSUE
CT Page 6550
Whether paragraph 8.3 of the agreement[1] for the purchase and sale of stock constitutes an arbitration clause, thus permitting this court to order arbitration.
 DISCUSSION
"The intent of the parties that arbitration be the exclusive method for the settlement of disputes arising under the contract must be clearly manifested. This express intent by both parties to enter into the arbitration agreement is essential to its existence. . . . An agreement to arbitrate must be clear and direct and not depend on implication." (Emphasis in original; internal quotation marks omitted.) Jacob v. Seaboard. Inc.,28 Conn. App. 270, 273, 610 A.2d 189, cert. denied, 223 Conn. 923,614 A.2d 822 (1992). Where the intent of the parties is to be gleaned from the language of the contract, not from the credibility and testimony of live witnesses, the question is one of law. Id., 273-74.
In contrast, "appraisement . . . is what takes place in any case where parties refer to selected persons some ministerial duty or some matter involving only the ascertainment of facts, requiring neither hearing nor exercise of judicial discretion.' 5 Am. Jur.2d, Arbitration and Award 3." Vandrilla v. MiddlesexMutual Assurance Co., Superior Court, judicial district of Tolland at Rockville, Docket No. 53963 (December 6, 1993, Hammer, J.).
In Jacob v. Seaboard, Inc., supra, 28 Conn. App. 270, the Appellate Court held that a clause in an agreement for the purchase and sale of stock did not evidence the intent to resolve valuation disputes by arbitration. The clause in that case reads as follows: "The Sellers shall . . . appoint an appraiser of their choice and the Buyer shall . . . appoint an appraiser of its choice. The two (2) appraisers shall independently determine the fair market value of the Sellers' shares of stock. . . . [W]ithin One Hundred Twenty (120) days of receipt [of corporate information], Sellers' appraiser and Buyers' appraiser shall then meet to compare their respective appraisals to arrive at a consensus as to the fair market value of the Sellers' shares of stock. If within fifteen (15) days after such meeting, the appraisers shall be unable, after making a good faith effort, to agree upon an appropriate valuation, they shall by mutual agreement within fifteen (15) additional days select a third appraiser to whom the matter shall be submitted. . . . After CT Page 6551 giving each appraiser full opportunity to be heard, the third appraiser shall then make its own independent determination of the fair market value of the Sellers' shares of stock, which valuation shall be final and binding upon all parties. . . ." Id., 271.
The Jacob court held that "the intent of the parties, as evidenced by the language of their agreement, was to provide for an appraisal subject to enforcement in a separate plenary action, rather than an arbitration award enforceable through confirmation by the trial court." Id., 276. The court reasoned that "[w]here the decision is to be made solely on the opinion of the parties' expert witnesses, without taking evidence from or hearing argument of the parties, without notice to the parties, and without providing the parties the opportunity to question the opinions of the other's expert witness, the attributes of a quasi judicial proceeding are missing." Id., 275-76. Because "[a]rbitration is a quasi judicial proceeding," the court concluded that the parties agreed to an appraisal, not to an arbitration. Id., 275-76.
In Ginsberg v. Coating Products, Inc., 152 Conn. 592,210 A.2d 667 (1965), Connecticut's Supreme Court construed an agreement providing that "[a]ny controversy arising under or pertaining to this Agreement, or the interpretation, performance or breach of any provision thereof, shall be submitted to and determined by arbitration. . . ." Id., 595. The court concluded that where "the arbitrators would have to determine not only the ultimate value of each share but also the method to be used in determining that value . . . the dispute [was] not merely a controversy over a simple appraisal." Id., 596. The court held that the dispute between the parties was a "genuine bona fide dispute between the signatories," and thus constituted a "controversy" subject to arbitration under the agreement. Id., 596.
Connecticut courts have construed certain appraisal clauses as written arbitration agreements. For example, in Covenant Ins.Co. v. Banks, the Supreme Court concluded that a statutorily mandated fire insurance appraisal clause constituted a written agreement to arbitrate. Covenant Ins. Co. v. Banks,177 Conn. 273, 279-80, 413 A.2d 862 (1979); see also Middlesex MutualAssurance Co. v. Clinton, 38 Conn. App. 555, 564, 662 A.2d 1319
(1995). This standard form provides, in part: "In case the insured and this Company shall fail to agree as to the actual CT Page 6552 cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected. . . . The appraisers shall first select a competent and disinterested umpire. . . . The appraisers shall then appraise the loss . . . and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss." General Statutes § 38a-307.
 CONCLUSION
The parties' purchase and sale agreement most resembles the agreement construed in the Jacob case because their agreement provides for binding stock valuation by an independent,disinterested party in the event that the parties fail to reachagreement. (Emphasis added). Further, the parties' agreement, like the agreement in the Jacob case, makes no provision for the questioning of experts by the parties or for the presentation of evidence and witnesses. See Jacob v. Seaboard, Inc., supra,28 Conn. App. 276. Although the appraisal process described in theJacob agreement resembles the procedure described in the statutory fire insurance form, Jacob is applicable in this instance because interpretation of the fire insurance form does not involve determinations of the parties' intent. See id., 275.
The reasoning of Ginsberg is inapposite because that case determined whether there was a "controversy" under the agreement, not whether the parties intended to agree to arbitration to resolve valuation disputes. See Ginsberg v. Coating Products,Inc., supra, 152 Conn. 595. Thus, although "the valuation of stock can be an arbitrable controversy," Jacob v. Seaboard, supra, 28 Conn. App. 275, the agreement in this case does not provide for sufficient formality to conclude as a matter of law that the parties intended to arbitrate their valuation disputes.
Application to Proceed to Arbitration is denied.
Frank S. Meadow Judge Trial Referee