RICHARD PRESTON *v.* STATE OF CONNECTICUT,
DIVISION OF CRIMINAL JUSTICE
(AC 19395)

Schaller, Zarella and Pellegrino, Js.

Argued May 31—officially released November 28, 2000

*Stephen J. Courtney*, for the appellant (plaintiff).

*Saranne P. Murray*, with whom, on the brief, was *Jennifer Bullock Majewski*, for the appellant (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Richard Preston, appeals from the judgment of the trial court rendered in favor of the defendant, the division of criminal justice, denying the plaintiff's application to vacate an arbitration award. On appeal, the plaintiff claims that the court improperly (1) denied his application because the award was untimely issued and (2) failed to rule on his alternative grounds for vacating the award. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The plaintiff formerly was employed by the defendant as a prosecutor and was a member of the prosecutor's bargaining unit, Connecticut Prosecutors, Local 1437, Council 4, AFS-CME (union). The union and the defendant were parties to a collective bargaining agreement (agreement) covering the period from July 1, 1994, to June 30, 1997.

On May 9, 1995, the defendant terminated the plaintiff from employment as a result of his "conduct, including alleged stalking and harassing of . . . two women." In accordance with the agreement, the union filed a

grievance on behalf of the plaintiff regarding his discharge from employment with the defendant. In accordance with the agreement, the union and the defendant submitted the grievance to arbitration with an unrestricted submission as follows: "Did the [defendant] have just cause to discharge [the plaintiff]? If not, what shall be the remedy, consistent with the contract and the parties' agreement concerning the tolling of liability in this matter?"

Subsequently, hearings were held before arbitrator Louis Pittocco (arbitrator).[1] At the first arbitration hearing on October 30, 1996, the plaintiff signed a waiver of union representation and proceeded pro se. At the November 5, 1996 hearing, an issue arose with respect to the admissibility of evidence. The parties agreed to present briefs to the arbitrator regarding that issue postmarked December 10, 1996, which deadline subsequently was extended to January 3, 1997. After briefs were presented, the arbitrator issued a ruling allowing the admission of the disputed evidence on January 14, 1997.[2] At the last hearing on May 1, 1997, the parties

[1] The hearings were held in Rocky Hill on October 30 and November 5, 1996, and January 23, March 31, April 2 and May 1, 1997.

[2] Article nine, § 9 (d), of the agreement, regarding grievance procedure, provides in relevant part: "The arbitrator shall have no power to add to, subtract from, alter, or modify this Agreement . . . . The arbitrator shall render his/her decision in writing no later than thirty (30) calendar days after the conclusion of the hearing unless parties jointly agree otherwise.

"The arbitrator's decision shall be final and binding on the parties in accordance with the . . . General Statutes § 52-418 provided, however, neither the submission of questions of arbitrability to any arbitrator in the first instance nor any voluntary submission shall be deemed to diminish the scope of judicial review over arbitral awards, including awards on competent jurisdiction to construe any such award as contravening the public interests.

"Late Arbitration Awards. On those cases in which an arbitrator fails without permission of the parties to render a decision within the contractual time limits:

"a. the award shall be void;

"b. the arbitrator shall be dropped from the panel;

"c. the arbitrator shall not be paid."

agreed to submit posthearing briefs to the arbitrator postmarked May 30, 1997, which date was later extended by mutual agreement to June 6, 1997.

In a letter dated July 2, 1997, the arbitrator gave notice that he was unable to complete the arbitration award by July 6, 1997, and indicated that he would be postmarking the award by July 11, 1997.

At the evidentiary hearing held later before the court, the arbitrator testified that he did not receive any objections from the parties with respect to his July 2, 1997 letter. The arbitrator also testified that in light of his experience, he assumed that in the absence of an objection, his request for the extension had been granted.[3]

On July 7, 1997, attorney Anne H. Littlefield, counsel for the defendant, contacted the plaintiff concerning the July 2, 1997 letter. The plaintiff was noncommittal and stated that he needed more time to do "research" before he responded to Littlefield's suggestion of a joint agreement for an extension of time. The plaintiff testified that when he called Littlefield's office later in the day, he left a message with a secretary that he was unable to enter into a joint agreement. Littlefield testified that the only message she received was that the plaintiff would respond separately to the arbitrator.

In a letter dated July 7, 1997, attorney Saranne P. Murray, also counsel for the defendant, responded to the arbitrator's July 7, 1997 letter. In her letter, Murray informed the arbitrator that the defendant consented to an extension of the deadline for filing the award until July 11, 1997. Moreover, Murray advised the arbitrator that the union's agent, Joel Schweidel, had indicated in a telephone conversation that although he was not

---

[3] The plaintiff testified that he received the arbitrator's July 2, 1997 letter on July 5, 1997. He further testified that he did not contact the arbitrator at that time or at any other time.

sure if the union had standing due to the plaintiff's pro se status, the union had no objection to the deadline.

Subsequent to receiving Murray's July 7, 1997 letter, the plaintiff did not call or write the arbitrator. Instead, the plaintiff spoke to Schweidel and specifically instructed him to write a letter to the arbitrator. Although Schweidel wrote a letter dated July 11, 1997, that letter failed to state the plaintiff's alleged position that he already considered the award to be void. Instead, the letter merely informed the arbitrator that "the union cannot take a position on the extension of the deadline for filing your decision."

On July 10, 1997, the arbitrator issued his award with a cover letter dated July 11, 1997. The arbitrator found that the defendant had just cause to discharge the plaintiff and therefore denied the grievance. The arbitrator's decision stated in relevant part: "With regard to the allegations of illegal and unethical conduct through harassment and stalking . . . the arbitrator finds that these actions on [the plaintiff's] part were deplorable and unacceptable for a prosecutor. . . . [T]here was sufficient proof to sustain his discharge."

On August 5, 1997, pursuant to General Statutes § 52-418,[4] the plaintiff filed an application to vacate the

[4] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

award. The plaintiff also filed a motion to present additional evidence seeking to introduce numerous facts and exhibits regarding his application to vacate the award. The evidence that the plaintiff sought to admit included material concerning the arbitrator's admission of evidence at the arbitration hearing that had been suppressed in connection with the plaintiff's criminal prosecution, as well as the arbitrator's decision to exclude other evidence proffered by the plaintiff. The court, *Devlin, J.*, granted the plaintiff's motion in part and denied it in part, stating that "[t]he parties shall be permitted to offer evidence on the question of whether the arbitrator's decision was untimely issued. The motion is otherwise denied."

On October 20, 1998, an evidentiary hearing limited to the issue of timeliness was held. On February 19, 1999, the court, *Hon. Mary R. Hennessey*, judge trial referee, issued its decision denying the plaintiff's application to vacate the award. The court found that the union remained a party to the arbitration process and, therefore, "under the agreement it had the authority to grant the extension of time requested by the arbitrator." The court found that because the defendant and the union had agreed to the extension of time, the award was timely. The court further found that even if the award was untimely, the plaintiff had waived any objection to its untimeliness through his actions. The plaintiff thereafter filed this appeal.[5]

I

The plaintiff first claims that the court improperly determined that the arbitration award was timely issued. We disagree.

[5] The plaintiff also filed a motion for articulation of the court's decision denying his application. The plaintiff asked the court to "articulate its consideration and decision thereof" with respect to the grounds he proffered for vacating the award other than timeliness. The court denied the motion, ruling that "the only issue before this court was the issue of timeliness, which this court addressed fully in its decision."

A

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

In deciding the plaintiff's application to vacate the arbitration award, the court made the following additional findings of fact. The court found that although the plaintiff declared his intention to proceed pro se in the arbitration, the union remained a party in the matter before the arbitrator. The court recognized that the agreement at issue here was between the "State of Connecticut, acting by and through the Connecticut Division of Criminal Justice . . . and Connecticut Prosecutors, Local 1437, AFSCME Council 4 . . . ." Although the plaintiff waived union representation so he could argue pro se, this action did not remove the union from being a party to the arbitration. In its memorandum of decision, the court concluded, therefore, that "under the agreement [the union] had the authority to grant the extension of time requested by the arbitrator. The arbitrator cannot be put in the position of having to determine whether under the agreement the union can or cannot give consent to the request for an extension of time when the [plaintiff] elects to represent himself in the proceedings. The arbitrator has the right to rely on the language of the agreement, which specifies 'parties' as being the ones who must jointly agree to an extension of time. In this case, there was joint agreement between the [defendant] and the union for the extension of time until July 11, 1997. The award issued on July 11, 1997, [was] *within the extension of time agreed to and was therefore timely.*" (Emphasis added.)

On the whole record, the conclusions challenged here are legally and logically correct, and the facts set out in the court's memorandum of decision find ample support in the evidence. We therefore cannot conclude that the court's factual findings or conclusions are clearly erroneous.

B

Although the facts set out in the court's memorandum of decision find ample support in the evidence, we must still analyze whether the arbitration award violated § 52-418 (a) (4). In addition to the limitations on this court's review of the trial court's factual findings, our "[j]udicial review of arbitral decisions is narrowly confined. When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 185, 530 A.2d 171 (1987). When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 415–16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. *Middletown* v. *Police Local, No. 1361*, 187 Conn. 228, 230, 445 A.2d 322 (1982); *State* v. *Connecticut Employees Union Independent*, 184 Conn. 578, 579, 440 A.2d 229 (1981). *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992). Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that

the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 340–41, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985).

"One of the principal reasons for this deference is that the scope of our review is expressly limited by § 52-418; *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 118, 676 A.2d 825 (1996); and, sometimes, by the terms of the parties' agreement. *Garrity* v. *McCaskey*, supra, 223 Conn. 5 ([t]he authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review). We have stated on numerous occasions that arbitration is a creature of contract [whereby the parties themselves, by agreement, define the powers of the arbitrators]. See, e.g., *American Universal Ins. Co.* v. *DelGreco*, supra, 205 Conn. 185; *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987); *Board of Education* v. *AFSCME, Council 4, Local 287*, 195 Conn. 266, 269, 487 A.2d 553 (1985). Therefore, it is the arbitrator's judgment that was bargained for and contracted for by the parties, and we do not substitute our own judgment merely because our interpretation of the agreement or contract at issue might differ from that of the arbitrator.

"These well established principles governing consensual arbitration are subject to certain exceptions. Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute; *Caldor, Inc.* v. *Thornton*, [supra, 191 Conn.

344]; (2) the award violates clear public policy; *Watertown Police Union Local 541* v. *Watertown,* 210 Conn. 333, 339, 555 A.2d 406 (1989); or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. *Carroll* v. *Aetna Casualty & Surety Co.,* [189 Conn. 16, 22–23, 453 A.2d 1158 (1983)]. *Garrity* v. *McCaskey,* supra, 223 Conn. 6." (Internal quotation marks omitted.) *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998,* 248 Conn. 108, 114–16, 728 A.2d 1063 (1999).

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.

"So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternate dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties. . . .

"In *Garrity,* we adopted the test enunciated by the United States Court of Appeals for the Second Circuit

in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Citations omitted; internal quotation marks omitted.) *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 304–305, 680 A.2d 1274 (1996).

The crux of the plaintiff's claim is that the arbitrator exceeded his authority within the meaning of § 52-418 (a) (4) because the award was issued in an untimely manner under the terms of the collective bargaining agreement. Moreover, the plaintiff contends that he expressly waived union representation and, therefore, the union was not a party to the arbitration. Thus, the plaintiff argues that the union had no right to grant permission to extend the time limit for the issuance of the award.

Because we have already determined that the award was timely since the proper parties consented to the time extension, the plaintiff has no further basis to challenge the award due to the unrestricted nature of the agreement. We conclude, therefore, that § 52-418 was not violated by the arbitrator's decision. The terms of the award are clear, and the award conforms to the issues submitted. Accordingly, we affirm the judgment of the trial court in denying the application to vacate the award.

## II

The plaintiff next claims that the court improperly failed to rule on his alternative grounds for vacating the arbitration award.[6] We disagree.

After the court denied the plaintiff's application to vacate the award, the plaintiff filed a motion for articulation concerning that decision. Although the court previously had ruled that the case would proceed only with regard to the issue of timeliness, the plaintiff asked the court to "articulate its consideration and decision thereof" with respect to the grounds he had proffered for vacating the award other than timeliness. The court denied that request, ruling that "the only issue before this court was the issue of timeliness, which this court addressed fully in its decision." The plaintiff failed to perfect the record by filing a motion for review with this court pursuant to Practice Book § 66-7.

Our rules provide a procedure for clarifying the record when rulings of the trial court are unclear. Practice Book § 66-7; *Buchetto* v. *Haggquist*, 17 Conn. App. 544, 548, 554 A.2d 763, cert. denied, 211 Conn. 808, 559 A.2d 1141 (1989). Our rules provide a procedure for reviewing the adequacy of the trial court's response to a motion for articulation. Practice Book § 66-7. "When a party is dissatisfied with the trial court's response to a motion for articulation, he [or she] may, and indeed under appropriate circumstances he [or she] must, seek immediate appeal . . . to this court via a motion for

---

[6] On appeal, the plaintiff proffers the following alternative grounds as bases for reversing the judgment of the trial court: (1) the arbitrator exceeded his authority, contrary to public policy, in finding that the plaintiff was guilty of a criminal offense, (2) the arbitrator's decision to admit suppressed evidence unfairly prejudiced the plaintiff and violated public policy as reflected in General Statutes § 54-33f and (3) the arbitrator refused to hear evidence pertinent and material to the controversy resulting in prejudice to the plaintiff in contravention to § 52-418 (a) (3).

review." (Internal quotation marks omitted.) *State* v. *One 1993 Black Kenworth Truck*, 41 Conn. App. 779, 789, 679 A.2d 13 (1996), quoting *Buchetto* v. *Haggquist*, supra, 549.

"Even if we assume the validity of this claim, proper utilization of the motion for articulation [and the motion for review] serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. *Barnes* v. *Barnes*, 190 Conn. 491, 494, 460 A.2d 1302 (1983). The burden of securing an adequate record for appellate review of an issue presented on a cross appeal rests with the cross appellant. *Niles* v. *Niles*, 9 Conn. App. 240, 249, 518 A.2d 932 (1986). *Anderson* v. *Schieffer*, 35 Conn. App. 31, 45, 645 A.2d 549 (1994). Because it is the [cross] appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the [cross] appellant should have remedied. . . . *State* v. *One 1993 Black Kenworth Truck*, supra, 41 Conn. App. 789; *Buchetto* v. *Haggquist*, supra, 17 Conn. App. 549; *Barnes* v. *Barnes*, supra, 494." (Internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 180, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). We therefore decline to review this issue.

The judgment is affirmed.

In this opinion the other judges concurred.