## RICHARD PRESTON *v.* PAULA J. O'ROURKE
### (AC 21278)

Lavery, C. J., and Flynn and Hennessy, Js.

---

Argued October 22—officially released December 24, 2002

*Richard Preston,* pro se, the appellant (plaintiff).

*Andrew J. O'Keefe* with whom were *Joseph M. Busher, Jr.,* and, on the brief, *Philip R. Dunn, Jr.,* for the appellee (defendant).

*Opinion*

FLYNN, J. In this tort action, the plaintiff, Richard Preston, appeals from the summary judgment rendered

by the trial court in favor of the defendant, Paula J. O'Rourke, on her defense that her statements were made in preparation for and as part of a quasi-judicial arbitration proceeding and thus were protected utterances and statements entitled to absolute privilege.[1] The plaintiff claims that the court improperly (1) failed to review his claim that the arbitrator lacked subject matter jurisdiction, (2) concluded that arbitration was a quasi-judicial proceeding, (3) concluded that statements and actions of the defendant made before arbitration were entitled to absolute immunity and (4) denied the plaintiff's motion to seal portions of the file. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the plaintiff's claims. The plaintiff, a former prosecutor, initiated this action against the defendant, asserting claims of intentional infliction of emotional distress, negligent infliction of emotional distress, libel and slander. The plaintiff's allegations were based on statements made by the defendant in preparation for and during an arbitration hearing wherein the plaintiff challenged the decision of the division of criminal justice (employer) to terminate his employment.

The defendant had complained to Paul Slyman, an agent of the plaintiff's employer, both orally and in writing, that the plaintiff had behaved in a manner that placed her in fear for her physical well-being and caused her emotional upset. As a result of receiving the defendant's complaint and the complaint of another woman, the employer conducted an investigation and terminated the plaintiff from his employment.

---

[1] With respect to the defendant's 1994 statements, the court also concluded that all of the plaintiff's claims were time barred by the applicable statute of limitations. The plaintiff does not challenge that conclusion of the trial court. We limit our review, therefore, to the plaintiff's claims regarding the defendant's statements made before and during the arbitration proceedings in 1997.

Pursuant to the terms of the collective bargaining agreement governing the plaintiff's employment, the Connecticut Prosecutors, Local 1437, Council 4, AFSCME (union), filed a grievance on the plaintiff's behalf for review of his termination by an arbitrator. During arbitration, the defendant testified regarding the plaintiff's behavior toward her. On July 10, 1997, after several hearings, the arbitrator issued his findings and concluded that the employer had just cause to discharge the plaintiff and, therefore, denied the plaintiff's grievance. The plaintiff filed an application in the trial court to vacate the arbitration award. The court denied the application and affirmed the arbitrator's opinion and award. *Preston* v. *State Division of Criminal Justice*, Superior Court, judicial district of Hartford, Docket No. 572637 (February 25, 1999) (*Hon. Mary R. Hennessey*, judge trial referee). The plaintiff filed an appeal with this court and we affirmed the judgment of the trial court. *Preston* v. *State Division of Criminal Justice*, 60 Conn. App. 853, 761 A.2d 778 (2000), cert. denied, 255 Conn. 936, 767 A.2d 1212 (2001).

On September 10, 1999, the plaintiff commenced this action. With regard to statements made by the defendant in 1994, the plaintiff's revised complaint included six counts sounding in tort, including one count of intentional infliction of emotional distress, one count of negligent infliction of emotional distress, two counts of libel and two counts of slander. With regard to statements made by the defendant in 1997, the plaintiff's revised complaint included one count of libel and one count of slander. In both 1997 libel and slander counts, the plaintiff alleged that the defendant untruthfully, falsely and maliciously stated in executed written affidavits and before and during the arbitration hearing in 1997 that the plaintiff had been physically abusive during their relationship, made threats to the defendant that he would kill various individuals and followed or

lay in wait for the defendant. The plaintiff claimed that as a result of the defendant's statements, he suffered loss of reputation, employment and goodwill of both social and professional acquaintances.

The defendant filed a motion for summary judgment based on her special defenses, claiming that all of her statements about the plaintiff were made in preparation for and as part of a quasi-judicial proceeding and thus were protected utterances and statements entitled to absolute privilege. The defendant further claimed that the plaintiff's 1994 counts were barred by the statute of limitations. See footnote 1. The plaintiff objected, arguing that the arbitration was not a quasi-judicial proceeding, and, therefore, the defendant's statements should not be afforded immunity. The plaintiff further argued that the defendant's statements to Slyman in 1997, although Slyman allegedly was acting as an agent of the employer, were not part of the arbitration and, therefore, were not entitled to the protection of immunity even if the defendant's actual testimony at the arbitration hearing was afforded such protection. The court granted the defendant's summary judgment motion, concluding that the counts regarding the 1994 statements were barred by the applicable statute of limitations and that the two remaining counts regarding the 1997 statements were protected as statements made in preparation for and as part of a quasi-judicial proceeding. This appeal followed.

"The standards governing our review of a trial court's decision on a motion for summary judgment are clear. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . While the burden of showing the nonexistence of any material fact is on the party seeking sum-

mary judgment . . . the party opposing [summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . .

"Equally well settled is that the trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [T]he trial court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citations omitted; internal quotation marks omitted.) *Field* v. *Kearns*, 43 Conn. App. 265, 269–70, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996).

I

The plaintiff first claims that the court improperly failed to review his claim that the arbitrator lacked subject matter jurisdiction.[2] Specifically, he argues that the agreement to submit to arbitration was in opposition to General Statutes § 51-278b (b),[3] which limits the authority to terminate prosecutors to the criminal justice commission, and thus the arbitrator did not legally possess any of the powers referenced in *Field* v. *Kearns*, supra, 43 Conn. App. 272. He argues that the agreement was contrary to law, a nullity and unenforceable in

---

[2] The plaintiff does not challenge the subject matter jurisdiction of the trial court here, but rather that of the arbitrator in the previous cause of action.

[3] General Statutes § 51-278b (b) provides: "No deputy chief state's attorney, state's attorney, assistant state's attorney or deputy assistant state's attorney may be removed from office except by order of the Criminal Justice Commission after due notice and hearing. A recommendation for removal from office may be initiated by the Chief State's Attorney or the appropriate state's attorney."

accordance with our Supreme Court's decision in *Nagy* v. *Employees' Review Board,* 249 Conn. 693, 706–707, 735 A.2d 297 (1999).

We note at the outset that it was the plaintiff who, through his union, initiated the arbitration proceedings, which took place in 1997. The plaintiff claims that he raised the issue of the arbitrator's subject matter jurisdiction at some point during those proceedings, but the plaintiff has not provided this court with any record to support this claim. There is no evidence in the record that the plaintiff objected to the arbitrator's jurisdiction in the arbitration itself, or before the Superior Court or this court on appeal from the arbitrator's decision. See *Preston* v. *State Division of Criminal Justice,* supra, 60 Conn. App. 853; *Preston* v. *State Division of Criminal Justice,* supra, Superior Court, Docket No. 572637. Only now, after having commenced a separate tort action against the defendant, does the plaintiff claim that the arbitrator lacked authority over the subject matter of the arbitration. "The authority of the arbitrator is a subject matter jurisdiction issue, and as such it may be challenged at any time prior to a final court judgment." *Bennett* v. *Meader,* 208 Conn. 352, 364, 545 A.2d 553 (1988).

We conclude that the time has passed for the plaintiff to object to the arbitrator's jurisdiction. The plaintiff voluntarily submitted his dispute to arbitration by action of the union without objecting to the arbitrability of the dispute. Although, in their agreement, the parties preserved the plaintiff's right to raise arbitrability to the trial court, the plaintiff failed to raise the arbitrability issue argued here before the arbitrator, the trial court or this court in the previous action. Compare *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 341 n.3, 464 A.2d 785 (1983) (arbitrability waived where not raised by parties at trial or on appeal), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). The plaintiff here

could have sought a declaratory judgment, as did the plaintiff in *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 543–44, 663 A.2d 317 (1995), in which the plaintiff claimed that because he was subject to discipline by the criminal justice commission, he was exempt from the regular grievance procedures applicable to attorneys generally. In the alternative, the plaintiff here might have sought a temporary or permanent injunction restraining or prohibiting the union from initiating or proceeding with any arbitration action as requested by the plaintiff in *Board of Police Commissioners* v. *White*, 171 Conn. 553, 554–55, 370 A.2d 1070 (1976). Although the plaintiff claimed that he objected to the arbitration, he has failed to show this court where in this record his objection could be found. We conclude, therefore, that the plaintiff failed to preserve for judicial review the issue of jurisdiction and that the court's failure to review it was not improper.

A determination as to the arbitrator's subject matter jurisdiction or lack thereof, moreover, would not remove the defendant's statements from the protection of the absolute privilege for statements made by witnesses in the course of quasi-judicial proceedings. "There are frequent dicta to the effect that the tribunal must have jurisdiction, or power to act in the situation presented; but this would compel everyone concerned to decide the question of jurisdiction at his peril, and it seems clear that the correct rule is that a mere color of jurisdiction, in fact assumed, is sufficient." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 114, p. 819. It has never been the rule in Connecticut that a determination of whether a witness' statements are protected by absolute privilege must wait until the plaintiff has exhausted every opportunity to attack the jurisdiction of the tribunal. Such a rule would defeat the very purpose of the privilege of encouraging testimony free from fear of reprisals. Therefore, the trial court was not

required to determine the jurisdiction of the arbitrator in the plaintiff's previous matter.

## II

The plaintiff next claims that the court improperly concluded that arbitration was a quasi-judicial proceeding for purposes of absolute immunity. Specifically, the plaintiff argues that the collective bargaining agreement does not require that a record of the proceeding be kept or that witnesses be under oath so that they are subjected to the potential penalty of perjury. He argues, therefore, that the arbitrator had no powers to enforce or impose penalties of contempt or otherwise to threaten the use of criminal sanction on untruthful witnesses and for lack of those powers failed the sixth prong of *Field* v. *Kearns*, supra, 43 Conn. App. 272.

The issue is whether the arbitrator's lack of power to enforce or impose penalties of contempt or otherwise to threaten the use of criminal sanction on untruthful witnesses prevents the arbitration from being a quasi-judicial proceeding and thereby deprives witnesses testifying therein of the protection of absolute immunity for those statements.

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Serrano* v. *Burns*, 70 Conn. App. 21, 25, 796 A.2d 1258, cert. denied, 261 Conn. 932, 806 A.2d 1066 (2002). Because the court in the present case rendered judgment for the defendant as a matter of law, our review is plenary.

In *Field*, we explained that "[i]n determining whether a proceeding is quasi-judicial . . . our review is not

limited to the label of the proceeding, but includes a review of the proceeding itself. The principal factors to be considered are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties. . . . Further, quasi-judicial is defined as the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." (Citations omitted; internal quotation marks omitted.) *Field* v. *Kearns*, supra, 43 Conn. App. 271–72.

"Arbitration is the voluntary submission, by the interested parties, of an existing or future dispute to a disinterested person or persons for final determination. . . . General Statutes § 52-408 provides a statutory right for parties to agree in writing to arbitration." (Citations omitted; internal quotation marks omitted.) *Jacob* v. *Seaboard, Inc.*, 28 Conn. App. 270, 273, 610 A.2d 189, cert. denied, 223 Conn. 923, 614 A.2d 822 (1992). Oftentimes, "[a]rbitration is a quasi judicial proceeding. See *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 173–74 (2d Cir. 1984); *Caldor, Inc.* v. *Thornton*, [supra, 191 Conn 344–45]; *Local 530, AFSCME, Council 15* v. *New Haven*, 9 Conn. App. 260, 269, 518 A.2d 941 (1986). It is a contractual remedy intended to avoid the formalities of ordinary litigation. . . . Such a quasi judicial proceeding is adversarial in nature, and implies that the parties will present witnesses and evidence, if they want, after notice of a hearing date, and argue their positions to an impartial decision maker. . . .

"Our statutes make provisions for subpoena and deposition powers, formal notice to the parties, arbitrator's oaths, and the time necessary to render awards. See General Statutes §§ 52-411 through 52-416." (Citations omitted.) *Jacob* v. *Seaboard, Inc.*, supra, 28 Conn. App. 275–76.

"In Connecticut, parties to or witnesses before judicial or quasi-judicial proceedings are entitled to absolute immunity for the content of statements made therein." *Field* v. *Kearns*, supra, 43 Conn. App. 271. "The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. . . . The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . .

"The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. . . . It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." (Citations omitted; internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986). "There is, of course, no really effective civil remedy against perjurers; that lack is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say. . . . The common law absolute privilege itself is not confined to the testimony of a witness but extends to any statement made in the course of a judicial proceeding, whether or not given under oath, so long as it is

pertinent to the controversy. . . . Thus it applies to statements made in pleadings or other documents prepared in connection with a court proceeding." (Citations omitted; internal quotation marks omitted.) Id., 251–52.

We conclude that here the court properly concluded that the arbitration was a quasi-judicial proceeding. The arbitrator was an impartial decision maker who performed a judicial function by holding hearings where the parties argued their cases and presented witnesses and evidence. The parties agreed that the arbitrator had the power of discretion in applying the law to the facts and in rendering a final award. By statute, the arbitrator had the power to subpoena witnesses and to provide formal notice to the parties and was given the time necessary to render awards. General Statutes §§ 52-411 to 52-416. Although not required to do so by the collective bargaining agreement, the witnesses testified under oath.[4] Furthermore, by statute, either party could appeal to the trial court to request an order confirming the arbitrator's award or to vacate, modify or correct the award. General Statutes §§ 52-418 and 52-419. On the basis of the foregoing, we conclude that the arbitrator possessed the authority to conduct proceedings of a quasi-judicial nature.

Notwithstanding the plaintiff's argument to the contrary, we need not specifically find that the sixth prong of *Field* v. *Kearns*, supra, 43 Conn. App. 272—whether decision-making body has the power to enforce decisions or impose penalties—was fulfilled in this case. The *Field* decision merely lists the principal factors to be considered, but it does not state that all of the factors have to be satisfied to find that a proceeding is quasi-judicial. See id., 271–72; see also *Thomas* v. *Petrulis*,

---

[4] In the award, the arbitrator stated: "The oath was administered to all who testified . . . ."

125 Ill. App. 3d 415, 420, 465 N.E.2d 1059 (1984) ("quasi-judicial body need not possess all six powers").

All of the defendant's statements underlying the plaintiff's 1997 libel and slander claims allegedly were made before and during the arbitration hearing.[5] All of these statements were made either to the employer or to the arbitrator and were made in preparation for or during the arbitration hearing. Moreover, the statements were obviously pertinent to the purpose of the hearing regarding the termination of the plaintiff's employment, which was supported in part by his behavior toward the defendant. The dictates of public policy require that a witness involved in an arbitration proceeding regarding the fitness of a prosecutor be able to state candidly her reasons for complaining about the prosecutor as long as the statement bears a reasonable relation to the purpose of the proceeding. See, e.g., *Petyan* v. *Ellis*, supra, 200 Conn. 250–51. Moreover, permitting absolute immunity in such a situation furthers the policy underlying the privilege "that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.) Id., 246.

The plaintiff argues that we should draw a distinction in this case between purely private labor arbitration

---

[5] The plaintiff attempts to label the defendant as the complaining witness who initiated the arbitration proceedings in which she made the allegedly defamatory statements. On the contrary, it was the plaintiff, through his union, who initiated the arbitration process. In similar situations, courts have held that statements made in investigations of employee claims were not actionable defamation under a theory that the employee had impliedly consented to publication. *Ernst* v. *Indiana Bell Telephone Co.*, 475 N.E.2d 351, 355 (Ind. App. 1985) ("[o]ne who agrees to submit his conduct to investigation knowing that its results will be published consents to that publication"). We need not determine whether a theory of consent to publication should apply in this case, however, given our determination that the defendant's statements are protected by absolute immunity.

and the actions of public administrative officers or bodies; see *Field* v. *Kearns*, supra, 43 Conn. App. 272; when reaching the conclusion that the arbitration in this case was a quasi-judicial proceeding entitled to absolute immunity. We are not persuaded for several reasons.

First, our legislature has enacted a number of statutes; see, e.g., General Statutes §§ 52-417 et seq. and 52-549z; that allow arbitration awards to be converted into judgments of the court. These statutes evince the legislature's approval of the arbitration process, in general, as an efficient form of alternate dispute resolution, which avoids the cost to the parties and the public of a formal trial. See *Nunno* v. *Wixner*, 257 Conn. 671, 682–83, 778 A.2d 145 (2001). If witnesses in arbitration proceedings were not afforded the protection of absolute immunity, as in more formal judicial proceedings, arbitration no longer would be seen as a desirable alternative form of dispute resolution.

Second, this case does not present us with a purely private labor arbitration. It is something of a hybrid in that a state agency, the division of criminal justice, and the plaintiff's union submitted the plaintiff's grievance to binding arbitration pursuant to the terms of a collective bargaining agreement.[6] The plaintiff's argument fails to acknowledge the significance of the State

---

[6] The parties argue whether communications made in the course of grievance or arbitration proceedings provided for by collective bargaining agreements should be accorded absolute or only qualified immunity. We recognize the existence of a split in authority on this issue, but we believe that the better result is the protection of absolute immunity. See *Hope* v. *National Alliance of Postal & Federal Employees*, 649 So. 2d 897, 900 (Fla. App. 1995) (holding statements made during course of grievance procedure absolutely privileged); *Bushell* v. *Caterpillar, Inc.*, 291 Ill. App. 3d 559, 683 N.E.2d 1286 (1997) (holding arbitration quasi-judicial proceeding and statements made therein absolutely privileged); *Neece* v. *Kantu*, 84 N.M. 700, 705–706, 507 P.2d 447 (N.M. App.) (holding absolutely privileged statements made during course of labor grievance arbitration proceedings), cert. denied sub nom. *Ritschel* v. *Neece*, 84 N.M. 696, 507 P.2d 443 (1973).

Employee Relations Act; General Statutes §§ 5-270 to 5-280; in the present situation. The act authorizes the use of employee organizations for the purpose of negotiations between the state and its employees, and the creation of collective bargaining agreements for state employees.[7] See General Statutes §§ 5-271, 5-276 and 5-276a. The act also contemplates the use of arbitration for resolving contract disputes between the state and employee organizations. General Statutes § 5-276. Collective bargaining agreements, such as the one in this case, are to be reduced to writing and submitted to the General Assembly for approval. General Statutes § 5-278 (b). Where, as here, an agency enters into an agreement on behalf of the state and our legislature has not expressed disapproval of the terms of the agreement, we do not agree with the plaintiff that the matter involves a matter of purely private labor arbitration. See General Statutes § 5-278 (b) (agreement deemed approved if not rejected by General Assembly within thirty days after submission).

III

The plaintiff claims that even if the defendant's testimony during the hearing was entitled to absolute immunity, the court improperly concluded that the statements and actions of the defendant made before arbitration were entitled to absolute immunity. We do not agree. Our resolution of the plaintiff's second claim resolves this claim because we concluded that the court properly found that the defendant's statements made before the arbitration hearings were made in preparation for the hearing and therefore were entitled to absolute immunity as part of a quasi-judicial proceeding.

---

[7] We note that the collective bargaining agreement recognizes one of the parties to the agreement as the "State of Connecticut, acting by and through the Connecticut Division of Criminal Justice."

## IV

The plaintiff's final claim is that the court improperly denied his motion to seal portions of the file. He argues that the court improperly permitted the defendant to attach to her motion for summary judgment an assistant state's attorney's affidavit containing information that was erased by operation of law, which thus constituted a prohibited disclosure. We do not agree.

The following additional facts are relevant to this claim. The affidavit of the assistant state's attorney referenced exhibits A and B, which were the agreement and arbitration award, respectively. Thereafter, the plaintiff filed a motion to seal portions of the file pursuant to Practice Book § 11-20 (b),[8] claiming that the attached award should be sealed because it contained information that had been previously erased pursuant to General Statutes § 54-142a[9] and prohibited from disclosure. Specifically, the plaintiff claimed that the arbitrator's reference to the criminal charges that arose as a result of the defendant's complaints was improper. With regard to the criminal charges, the plaintiff had

---

[8] Practice Book § 11-20 (b) provides: "Upon motion of any party, or upon its own motion, the judicial authority may order that the public be excluded from any portion of a proceeding and may order that files, affidavits, documents or other materials on file with the court or filed in connection with a court proceeding be sealed or their disclosure limited if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in attending such proceeding or in viewing such materials. Any such order shall be no broader than necessary to protect such overriding interest."

[9] General Statutes § 54-142a provides in relevant part: "(a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal . . . .

* * *

"(e) . . . [A]ny law enforcement agency having information contained in such erased records shall not disclose to anyone . . . information pertaining to any charge erased under any provision of this section . . . ."

accepted accelerated rehabilitation. The court denied the plaintiff's motion. In an articulation of its decision on the motion to seal portions of the file, the court first found that an affidavit executed by the assistant state's attorney contained no reference to any information previously erased in accordance with § 54-142a. The court further stated that "[t]he document to which the plaintiff is presumably referring is the arbitration opinion and award, not written by [the assistant state's attorney], but included in the submissions to the court in conjunction with the motion for summary judgment. The plaintiff appealed this award to the Superior Court, the award was affirmed, [*Preston* v. *State Division of Criminal Justice*, supra, Superior Court, Docket No. 572637] and he then appealed to the Appellate Court, which also affirmed the award, [*Preston* v. *State Division of Criminal Justice*, supra, 60 Conn. App. 853]. The court notes that this award has not been sealed in any other proceedings before the Superior or Appellate Court. Accordingly, there is no reason to seal the award in this action."

We review a court's denial of a motion to seal on the basis of whether it is an abuse of discretion. "Practice Book § 11-20 (b) permits a trial court to order that files, affidavits, documents or other materials on file with the court be sealed or their disclosure limited if the court concludes that such order is necessary to preserve an interest which is determined to override the public's interest in attending such proceeding or in viewing such materials. Any such order shall be no broader than necessary to protect such overriding interest." (Internal quotation marks omitted.) *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 51 Conn. App. 287, 290–91, 721 A.2d 154 (1998).

General Statutes § 54-56e permits a court to grant accelerated pretrial rehabilitation and to require that an

accused perform probation conditions. If the accused performs the probation conditions as required by the court, then the charges may be dismissed and shall be erased pursuant to § 54-142a. Section 54-142a (a) provides in part that "[w]henever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal . . . ." Section 54-142a (e) provides in part that "any law enforcement agency having information contained in such erased records shall not disclose to anyone . . . information pertaining to any charge erased under any provision of this section . . . ."

We conclude that the court did not abuse its discretion when it denied the plaintiff's motion to seal. The court's factual findings, which were not challenged on appeal, are essentially that the arbitrator's award that the plaintiff sought to seal was not a representation made by the assistant state's attorney, rather it was the ruling of the arbitrator, which was one of the documents submitted with the summary judgment motion. Furthermore, the court noted that the defendant failed to ask that portions of the file be sealed in prior proceedings. We therefore conclude that the court did not abuse its discretion in declining to seal the arbitration award because it was already in the public domain.

The judgment is affirmed.

In this opinion the other judges concurred.