STEVEN CRAIG *v.* STAFFORD CONSTRUCTION,
INC., ET AL.
(AC 23197)

Schaller, McLachlan and Peters, Js.

Argued May 27—officially released August 5, 2003

*Neil Johnson,* for the appellant (plaintiff).

*Ralph W. Johnson III,* with whom were *Kevin J. Greene* and, on the brief, *John B. Farley,* for the appellees (named defendant et al.).

PETERS, J. Statements made in preparation for or during a quasi-judicial proceeding are, as a matter of public policy, entitled to absolute immunity from liability. *Kelley* v. *Bonney*, 221 Conn. 549, 565–66, 606 A.2d 693 (1992). The issue in this case, an issue of first impression, is whether an internal affairs investigation conducted by the Hartford police department is a quasi-judicial proceeding so that statements made in the course of such a proceeding are entitled to an absolute privilege. The internal affairs investigation resulted from a citizen complaint of racial bias on the part of a police officer. In this defamation action by the police officer, the trial court held that the internal affairs investigation was a quasi-judicial proceeding and that the defendants, who had filed the citizen complaint, were entitled to absolute immunity from liability. We agree and affirm the trial court's summary judgment in favor of the defendants.

The plaintiff, Steven Craig, a police officer with the Hartford police department, brought a defamation action against the individual defendants, Eugene Ramistella and Miguel Aceves, as well as their employer, Stafford Construction, Inc. (Stafford).[1] In his second amended complaint, filed September 1, 1999, the plaintiff alleged that, in a citizen complaint against him, the defendants knowingly and falsely had accused him of having made derogatory racial comments. The plaintiff further alleged that, as a result of these allegedly false statements, he had suffered emotional harm and loss

[1] Aceves was a coworker at the construction site and, like Ramistella, alleged that he had heard the plaintiff make a derogatory racial comment. He was defaulted and did not join the remaining defendants' answer or their motion for summary judgment. He is, therefore, not involved in this appeal. We therefore refer in this opinion to Ramistella and Stafford as the defendants.

of respect and had been turned down for several requested promotions.

The defendants denied the allegations of the plaintiff and asserted, as a special defense, that Ramistella's statements were not actionable because of the doctrine of absolute immunity. Ramistella's immunity, they alleged, arose out of the fact that the statements of which the plaintiff complained had been made in the course of an investigation conducted by the internal affairs division of the Hartford police department. The defendants claimed that the investigation was a quasi-judicial proceeding.

On January 3, 2002, the defendants moved for summary judgment on the basis of their claim of absolute immunity. On June 5, 2002, the court granted the motion and rendered judgment in their favor.[2] The plaintiff has appealed.

In his appeal to this court, the plaintiff claims that the trial court improperly concluded that Ramistella's statements were protected by the doctrine of absolute immunity. He does not challenge the doctrine itself but claims that an internal affairs investigation conducted by the Hartford police department is not a quasi-judicial proceeding. Furthermore, according to the plaintiff, there is no sound public policy reason for allowing an individual to file a maliciously false citizen complaint against a police officer. The defendants ask us to affirm the court's judgment in all respects.

The standard of review governing the plaintiff's appeal is well established. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any

---

[2] Although the trial court did not issue a written memorandum of decision, the plaintiff provided this court with a signed transcript of the trial court's oral decision in compliance with Practice Book § 64-1 (a).

material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Torringford Farms Assn., Inc.* v. *Torrington*, 75 Conn. App. 570, 573, 816 A.2d 736, cert. denied, 263 Conn. 924, 823 A.2d 1217 (2003).

The trial court began its discussion of this case by reciting the relevant facts which, for present purposes, are undisputed. On March 17, 1997, the plaintiff accepted a private duty job offered by Stafford at a construction site at 1700 Main Street in Hartford. Ramistella was employed by Stafford and was working on the construction site that day. During a coffee break, the plaintiff made allegedly derogatory racial comments regarding the purpose of the construction project.

On April 14, 1997, Ramistella filed a citizen complaint with the internal affairs division. The internal affairs division conducted an investigation and formally charged the plaintiff with "conduct unbecoming of a police officer." During the investigatory process, Ramistella made a false statement regarding the March 17, 1997 incident.[3] A hearing was held on June 16, 1998,

---

[3] As with the defendants' motion for summary judgment before the trial court, the defendants, for the purpose of this appeal, do not challenge the plaintiff's contention that the statements made regarding the plaintiff were false.

at which Ramistella withdrew his complaint.[4] Several months later, the plaintiff was found not guilty.

The court then considered the applicable law. It began by noting that, in *Petyan* v. *Ellis*, 200 Conn. 243, 246, 510 A.2d 1337 (1986), our Supreme Court held that "an absolute privilege . . . attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature." (Internal quotation marks omitted.) The court turned next to *Kelley* v. *Bonney*, supra, 221 Conn. 567, for a description of the defining features of a quasi-judicial proceeding. Applying the *Kelley* criteria, the court concluded that the internal affairs investigatory process in this case was a quasi-judicial proceeding so that Ramistella's statements were absolutely privileged, and the plaintiff could not prevail in his defamation action.

Whether the internal affairs investigation conducted by the Hartford police department constitutes a quasi-judicial proceeding is a question of law for the court. See *Preston* v. *O'Rourke*, 74 Conn. App. 301, 309, 811 A.2d 753 (2002). We agree with the trial court's resolution of that question.

"The effect of an absolute privilege in a defamation action is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously. . . . [L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is quasi-judicial in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition. . . .

---

[4] Ramistella withdrew his complaint because he believed that the March 17, 1997 incident was nothing more than a misunderstanding.

"The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." (Citations omitted; internal quotation marks omitted.) *Kelley* v. *Bonney*, supra, 221 Conn. 565–66.

"[I]n determining whether a proceeding is quasi-judicial . . . our review is not limited to the label of the proceeding, but includes a review of the proceeding itself. The principal factors to be considered are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties. . . . Further, quasi-judicial is defined as the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." (Internal quotation marks omitted.) *Preston* v. *O'Rourke*, supra, 74 Conn. App. 309–10; see also *Kelley* v. *Bonney*, supra, 221 Conn. 567.

Our inquiry into whether a proceeding is quasi-judicial is not limited to an operational analysis of the proceeding to determine whether it falls within the exact contours of prior cases. A proceeding may be

characterized as quasi-judicial in nature even if it does not manifest all of the relevant factors that our case law has identified. *Preston* v. *O'Rourke*, supra, 74 Conn. App. 312. Furthermore, we must also inquire "whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." *Kelley* v. *Bonney*, supra, 221 Conn. 567.

## I

The trial court concluded that a Hartford police department's internal affairs investigation is a quasi-judicial proceeding by considering the internal affairs process in its entirety, as *Kelley* requires. See id., 566. The internal affairs process commences when a citizen complaint is submitted, preferably in written form and notarized. The complaint is then forwarded to the internal affairs division for a determination of whether it requires an investigation or may be resolved by the officer's immediate supervisor.

If an investigation is warranted, the internal affairs investigator may conduct interviews, obtain sworn statements and record witnesses. Additionally, the investigator may require the accused officer to submit a report about the incident.

After the investigator completes his or her report, the report is then subjected to command review with a recommendation about the proper course of action. The report is first reviewed by the division commander (lieutenant or above) and then by the bureau commander (captain or above). The report is then transferred to the office of the department advocate, who represents the chief of police. The advocate reviews the report and consults with the chief of police.

The chief of police determines whether the accused officer should be disciplined or whether a hearing is

warranted. The options available to the chief of police include: (1) counseling; (2) oral or written reprimand; (3) expedited hearing that may result in suspension of not less than one day but not more than five days; or (4) a formal hearing that may result in a penalty of not less than six days suspension and potentially termination of employment.

If the chief of police determines that a formal hearing is necessary, the accused officer receives a formal notice. The hearing is presided over by a hearing officer, a member of the police department. During the course of the proceedings, the accused officer may be represented by counsel, subpoenas may be issued to witnesses[5] and witnesses who testify at the hearing must do so under oath and are subject to cross-examination by the accused officer or his attorney. The hearing officer takes notes of the proceedings, which are subsequently typed and serve as the record. Finally, the hearing officer makes factual findings and issues a recommended decision.

The hearing officer's decision is then transferred to the chief of police, who may accept, reject or modify the decision. Once the chief of police renders a decision, the accused may appeal from the decision first to the Hartford city government (city hall) and then to the state labor board.

This process manifests many of the features of a quasi-judicial proceeding described in *Kelley*.[6] The internal affairs division exercises judgment and discretion in determining whether an investigation and hear-

---

[5] Although the record does not clarify to what extent the internal affairs division has the power to subpoena individuals, Ramistella and Aceves responded to subpoenas and were present at the hearing.

[6] This case is therefore distinguishable from our recent decision in *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 855–57, 825 A.2d 827 (2003), in which *no* governmental proceeding was ever initiated by the person claiming absolute immunity.

ing are warranted, whether to hold an expedited or formal hearing, and whether to issue a penalty. A primary function of the internal affairs process is to investigate and to ascertain facts. The fact that the accused officer may appeal from the decision does not lessen the quasi-judicial nature of the process. See *Preston* v. *O'Rourke*, supra, 74 Conn. App. 312.

Accordingly, we disagree with the plaintiff's contention that the internal affairs process lacks sufficient indicia of a quasi-judicial proceeding. The trial court properly ruled to the contrary.

## II

In our analysis of the internal affairs process, we must also consider the application of the principle of public policy that underlies absolute immunity. As our Supreme Court observed in *Petyan*, the policy reason for absolute immunity is that, under defined circumstances such as quasi-judicial proceedings, "the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, supra, 200 Conn. 246. This policy reflects the unspoken reality that, if there were no absolute immunity, good faith criticism of governmental misconduct might be deterred by concerns about unwarranted litigation. The doctrine of absolute immunity is thus undergirded by the constitutional protection that we afford to free speech about matters of public concern.

We must decide, therefore, whether the policy of supporting freedom of expression to voice citizen complaints against police officers justifies exposing an officer to the risk of false allegations of racial bias. We recognize that the risk to the police officer is serious. Nonetheless, in our view, the trial court properly con-

cluded that the defendants have established their right to absolute immunity.

Two cases heard by our Superior Court have concluded that the need to encourage the filing and investigation of valid complaints against police officers, who are public officials with significant power and authority, outweighs the possible detriment to accused officers subjected to false complaints. See *Arigno* v. *Murzin,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 474102 (February 6, 1998) (21 Conn. L. Rptr. 543); *Bieluch* v. *Smith,* Superior Court, judicial district of Litchfield, Docket No. 56050 (May 26, 1993).

This Connecticut case law is persuasively supported by the reasoning of courts in other states that also have recognized the importance of protecting the rights of citizens to voice complaints against police officers. See, e.g., *Gray* v. *Rodriguez,* 481 So. 2d 1298, 1299–1300 (Fla. App. 1986); *Miner* v. *Novotny,* 304 Md. 164, 176–77, 498 A.2d 269 (1985); *Lewis* v. *Benson,* 101 Nev. 300, 301, 701 P.2d 751 (1985); *Magnus* v. *Anpatiellos,* 130 App. Div. 2d 719, 720, 516 N.Y.S.2d 31 (1987); *Campo* v. *Rega,* 79 App. Div. 2d 626, 631, 433 N.Y.S.2d 630 (1980), appeal denied, 52 N.Y.2d 705, 437 N.Y.S.2d 1028, 419 N.E.2d 876 (1981); *Putter* v. *Anderson,* 601 S.W.2d 73, 76–77 (Tex. Civ. App. 1980); but see *Barge* v. *Ransom,* 30 S.W.3d 889, 892 (Mo. App. 2000); *Elder* v. *Holland,* 208 Va. 15, 21–22, 155 S.E.2d 369 (1967). These cases emphasize the need to maintain open channels of communication between citizens and their public officials because such communications are fundamental to our democratic form of government. See *Miner* v. *Novotny,* supra, 176; *Lewis* v. *Benson,* supra, 301.

The plaintiff argues that, to the contrary, absolute immunity should not extend to a citizen complaint con-

taining maliciously false statements. The plaintiff is correct that, if the doctrine of absolute immunity applies, a statement is immune from liability *even if* it is made falsely and maliciously. *Kelley* v. *Bonney*, supra, 221 Conn. 565.

The plaintiff's argument that the doctrine of absolute immunity should *not* apply relies principally on *McDonald* v. *Smith*, 472 U.S. 479, 105 S. Ct. 2787, 86 L. Ed. 2d 384 (1985), which held that such statements were not entitled to absolute immunity under the petition clause of the first amendment to the United States constitution. Id., 485. We are not persuaded that *McDonald* controls this case.

In our view, this state may, under its common law and constitutional law, provide greater immunity to citizen complaints than does federal law. The common law of absolute immunity rests on constitutional principles of free speech, which our state constitution recognizes in article first, § 4.[7] True, § 4 requires a citizen to take responsibility for abuse of the right to "freely speak," but it is the responsibility of Connecticut courts, not federal courts, to decide what constitutes an abuse. Under analogous circumstances, our Supreme Court held, in *State* v. *Marsala*, 216 Conn. 150, 167–71, 579 A.2d 58 (1990) (en banc), that search warrants were defective as a matter of state constitutional law, under Article 1, § 7, despite a good faith exception adopted as a matter of federal constitutional law in *United States* v. *Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). *Marsala* and *State* v. *Linares*, 232 Conn. 345, 380–81, 655 A.2d 737 (1995), make it plain that our free speech jurisprudence under our state constitution is not constrained by federal jurisprudence under the first

---

[7] The constitution of Connecticut, article first, § 4, provides: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

amendment. See also *Cologne* v. *Westfarms Associates*, 192 Conn. 48, 57, 469 A.2d 1201 (1984).

The plaintiff also argues that we should disregard the Superior Court decisions that we have cited, *Arigno* v. *Murzin*, supra, Superior Court, Docket No. 474102, and *Bieluch* v. *Smith*, supra, Superior Court, Docket No. 56050, because these cases are distinguishable. It is significant, according to the plaintiff, that those cases (1) involved a complaint process governed by state statute and (2) addressed the constitutional doctrine of absolute immunity. We disagree with both arguments.

First, in our view, we cannot see a distinction, for present purposes, between a complaint process against state police officers, which is governed by General Statutes § 29-2, and an internal affairs investigatory process that is authorized by a municipal charter.[8] In both cases, a court must undertake an analysis of the actual operations of a complaint process to determine whether the factors set forth in *Kelley* have been given proper consideration.

Second, we disagree that the constitutional law of free speech is irrelevant to the common-law doctrine of absolute immunity. The need to protect free speech in order to protect our democratic society is the underlying reason for imposing on persons such as the plaintiff the cost of having to suffer from knowing malicious misrepresentations. The discussion of free speech in the cited Superior Court cases is relevant, appropriate and persuasive.

We conclude, therefore, that the trial court properly held that statements made in the course of an internal affairs investigation against a Hartford police officer are sheltered by the common-law doctrine of absolute

---

[8] Chapter XV of the charter of the city of Hartford vests the chief of police with the authority to promulgate and enforce regulations concerning the operation and conduct of the Hartford police department.

immunity from actions of defamation.[9] We come to this conclusion for two reasons. The investigatory process conducted by the Hartford police department manifestly is a quasi-judicial proceeding. The protection of citizen complaints of police misconduct from the threat of defamation actions for statements made during a quasi-judicial proceeding serves the public policy of protecting free speech that furthers the interests of a democratic society.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Because we conclude that the statements made by the defendants are absolutely immune, we need not address the plaintiff's arguments regarding the doctrine of qualified immunity.